**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT



| | |
|---|---|
| CHARLES E. YEAGER, "Chuck" (Ret.); GENERAL CHUCK YEAGER, INC., | No. 21-55162 |
| Plaintiffs-Appellants, | D.C. No. 8:19-cv-01793-JLS-ADS |
| v. | |
| AIRBUS GROUP SE; et al., | MEMORANDUM[*] |
| Defendants-Appellees. | |

| | |
|---|---|
| CHARLES E. YEAGER, "Chuck" (Ret.); GENERAL CHUCK YEAGER, INC., | No. 21-55776 |
| Plaintiffs-Appellees, | D.C. No. 8:19-cv-01793-JLS-ADS |
| v. | |
| AIRBUS GROUP SE; et al., | |
| Defendants-Appellants. | |

Appeal from the United States District Court
for the Central District of California
Josephine L. Staton, District Judge, Presiding

---

[*]      This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Argued and Submitted April 4, 2022
Pasadena, California

Before:  SCHROEDER, S.R. THOMAS, and BEA, Circuit Judges.

The Estate of  General Charles E. Yeager ("General Yeager")[1] and the private corporate entity that owns the federal trademark on his name, General Charles Yeager, Inc., (collectively, "Yeager") appeal the district court's order dismissing the case for lack of personal jurisdiction.  We have appellate jurisdiction under 28 U.S.C. § 1291.  We affirm.

We review a dismissal for lack of personal jurisdiction de novo, but review underlying factual findings for clear error.  *Freestream Aircraft (Bermuda) Ltd. v. Aero Law Grp.*, 905 F.3d 597, 602 (9th Cir. 2018).  "Where, as here, a defendant's motion to dismiss is based on a written record and no evidentiary hearing is held, the plaintiff need only make a prima facie showing of jurisdictional facts."  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citation and internal quotation marks omitted).  Denials of requests for jurisdictional discovery are reviewed for abuse of discretion, *see AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1207 (9th Cir. 2020), as are denials of requests for attorneys' fees under Section 3344(a) of the California Code, *see Varney Ent. Grp., Inc. v. Avon Plastics, Inc.*, 275 Cal. Rptr. 3d

---

[1] General Yeager passed away on December 7, 2020.  General Yeager's estate continues this litigation on his behalf.

394, 400 (Cal. Ct. App. 2021), and under Section 1117(a) of the Lanham Act, *see* 15 U.S.C. § 1117(a); *SunEarth, Inc. v. Sun Earth Solar Power Co.*, 839 F.3d 1179, 1181 (9th Cir. 2016) (en banc) (per curiam). Because the parties are familiar with the procedural and factual history of the case, we need not recount it here.

I

The district court properly dismissed the case for lack of personal jurisdiction. Personal jurisdiction over out-of-state defendants is appropriate "where permitted by a long-arm statute and where the exercise of jurisdiction does not violate federal due process." *AMA Multimedia*, 970 F.3d at 1207. "Because California's long-arm jurisdictional statute is coextensive with federal due process requirements, the jurisdictional analyses under state law and federal due process are the same." *Boon Global Ltd. v. Dist. Ct.* (*In re Boon*), 923 F.3d 643, 650 (9th Cir. 2019) (citation omitted).

For cases involving intentional torts, as this case primarily does, the due process inquiry pivots on whether the defendants (1) "purposefully directed" their activities toward the forum; (2) the claim arises out of the forum-related activities; and (3) the exercise of jurisdiction comports with fair play and substantial justice. *AMA Multimedia*, 970 F.3d at 1208 (citation omitted); *see Picot*, 780 F.3d at 1212 ("[O]ur jurisdictional inquiry depends on the nature of the claim at issue."). To

3

allege purposeful direction, the plaintiff must claim that the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *AMA Multimedia*, 970 F.3d at 1209.

In this case, Yeager alleges that Airbus S.E., Airbus S.A.S., Airbus Helicopters, Inc., and Airbus Defense and Space, Inc. (collectively, "Defendants") used General Yeager's name and likeness in violation of state and federal laws, as well as in violation of an agreement prohibiting such use.

We assume, without deciding, that Yeager sufficiently pleaded two intentional acts: (1) Airbus S.A.S. ("Airbus") used footage from General Yeager's Europe visit in a sales video; and (2) Airbus used General Yeager's name in a press release-style piece published on its website. *See Morrill v. Scott Fin. Corp.*, 873 F.3d 1136, 1142 (9th Cir. 2017) (defining "intentional act" as "one denoting an external manifestation of the actor's will[,] not including any of its results" (citation omitted)); *see also Walden v. Fiore*, 571 U.S. 277, 289 (2014) (analyzing whether the "challenged conduct had anything to do with [the forum State] itself").

Yeager did not allege facts showing that either act was expressly aimed at California. Yeager claimed only that the sales video exists. He did not state that Airbus disseminated the sales video outside of Airbus, let alone that it distributed

4

the video in California. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 807 (9th Cir. 2004) (concluding that a defendant did not expressly aim materials at a state when they were not circulated in the state, seen by its residents, or tailored to the forum). Nor did Yeager allege that the video was seen by Californians or that its content addressed them, specifically. *See id.*; *Ayla, LLC. v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021) (determining that ads reading "ATTENTION USA BABES" were expressly aimed at the United States).

Likewise, Yeager did not allege that Airbus expressly aimed its 2017 press release discussing a product announcement at the Paris Air Show at California. He did not dispute that the website was passive, *AMA Multimedia*, 970 F.3d at 1209–10 ("A passive website alone cannot satisfy the express aiming prong [without] something more—conduct directly targeting the forum[.]" (citation omitted)), claim that Airbus sells advertising on its website to third-party advertisers that target California residents, *see Mavrix Photo, Inc. v. Brand Techs., Inc*, 647 F.3d 1218, 1230 (9th Cir. 2011), or assert that Airbus's website "appeals to, and profits from, a[] [website] audience in [California]," *AMA Multimedia*, 970 F.3d at 1210. Yeager also did not identify content in the press release reflecting an "intentional, explicit appeal to [California] consumers and no others." *See Alya, LLC*, 11 F.4th at 980.

That the search term "California" yields 190 results does not show the website was California-focused, particularly since other fora search terms yield many more results. *See AMA Multimedia*, 970 F.3d at 1210 (finding no jurisdiction, in part, because 80 percent of website viewers were outside the forum). Similarly, the fact that California has large aerospace and aviation industries does not establish that a website with global viewership and scope was expressly aimed at the state. *See id.* at 1210–11 (determining that a passive website was not expressly aimed at the United States merely because nearly 20 percent of its visitors were from the US and the US was its largest market).

Finally, Airbus's outreach to the Yeagers at their California residence does not establish that it expressly aimed its conduct at California. "[P]hysical entry" via mail "that is merely incidental to an out-of-state transaction does not satisfy the constitutional minimum contacts requirement." *Morrill*, 873 F.3d at 1147 (making phone calls, sending letters and emails, mailing documents, and filing various court documents in Arizona as part of "companion" proceedings to Nevada litigation did not show that such conduct was expressly aimed at Arizona); *In re Boon*, 923 F.3d at 653 ("[O]rdinarily use of the mails [or] telephone . . .simply do[es] not qualify as purposeful activity invoking the benefits and protection of the forum state." (citation omitted)). Just as the mailings at issue in *Morrill* were "a component

6

part" of litigation in another state, Airbus's outreach to the Yeagers at their California residence was a component part of endorsement negotiations in Nevada, and contract negotiations in Europe.

In short, the district court correctly concluded that these actions were not expressly aimed at the forum state of California and that the suit should be dismissed for lack of personal jurisdiction.

## II

The district court did not err in declining to exercise jurisdiction based on an alleged oral forum selection agreement. Assuming, without deciding, that such an agreement was made, this lawsuit falls outside the scope of the alleged agreement. Yeager alleges that during negotiations the then-CEO of Airbus S.A.S., agreed verbally that "any disputes arising from the negotiations for and/or the conducting of any endorsement deal would be resolved in a court of [Yeager's] choosing in the state of California." Federal law governs the scope of forum-selection clauses. *Yei A. Sun v. Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1086 (9th Cir. 2018). Under federal law, "forum-selection clauses covering disputes 'arising out of' a particular agreement apply only to disputes 'relating to the interpretation and performance of the contract itself.'" *Id.* (citation omitted); *see also id.* (stating selection clauses that cover disputes "relating to" an agreement are broader). Thus,

7

the alleged agreement here only applies to lawsuits that relate to the interpretation and performance of the contract itself.

The sales video at the core of Yeager's claim did not "relat[e] to the interpretation and performance" of an endorsement deal or negotiations with Airbus. *Yei A. Sun*, 901 F.3d at 1086. Yeager never reached an endorsement deal with Airbus, and his pleadings and exhibits underscore that the 2008 trip during which the footage was filmed was not for the purpose of endorsement negotiations. Moreover, Yeager's proposed "Deal Memo" specifically stated that "[e]ndorsement or the appearance of endorsement [was] . . . **not** allowed." Even if Airbus never agreed to the Deal Memo, its text—alongside Yeager's other pleadings and exhibits—supports the inference that the European trip was outside the scope of the oral forum selection clause.

## III

The district court did not abuse its discretion in denying jurisdictional discovery. "[R]efusal to provide such discovery will not be reversed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Boschetto v. Hansing*, 539 F.3d 1011, 1020 (9th Cir. 2008) (citation and internal quotation marks omitted). Yeager's request for discovery on Airbus's degree of control over its website, as well as the

identities of those who created and distributed the offending materials, would not clarify whether Airbus expressly aimed those materials or its website at California. Airbus's awareness that Yeager resided in California is neither disputed nor relevant to whether the Airbus expressly aimed its conduct at California, specifically. *Cf. id.* Absent any allegations to suggest Yeager's request was based on "more than a hunch that [discovery] might yield jurisdictionally relevant facts," *Boschetto*, 539 F.3d at 1020, the district court did not abuse its discretion in denying his request for discovery as to whether Airbus targeted the California market with its website. *See Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1160 (9th Cir. 2006).

IV

The district court did not abuse its discretion in denying attorneys' fees under Section 3344(a) of the California Code, *see Varney*, 61 Cal. App. 5th at 230, or Section 1117(a) of the Lanham Act, *see SunEarth*, 839 F.3d at 1181; 15 U.S.C. § 1117(a). We analyze Defendants' attorneys' fees claims collectively because Yeager's allegations did not distinguish between Defendants and all claims were dismissed under Federal Rule of Civil Procedure 12(b)(2).

A

The district court did not abuse its discretion in determining that the three entities Yeager sued under the California right of publicity statute—Airbus S.E., Airbus S.A.S., and Airbus Heliopters, Inc.—are not "prevailing parties" under Section 3344. Section 3344 does not define "prevailing parties," but California courts look to if "the party prevailed on a practical level," *Olive v. Gen. Nutrition Ctrs., Inc.*, 242 Cal. Rptr. 3d 15, 32 (Cal. Ct. App. 2018), and "it is possible for a trial court to conclude that neither party prevailed because neither party realized its litigation objectives," *id.* at 826–27. Even if Yeager's claims are now time-barred as Defendants claim, Defendants would have to convince another district court to rule substantively on the statute of limitations question in separate litigation because the district court declined to address it here. In other cases where continued litigation remained possible, California courts have determined that dismissals without prejudice meant neither litigant was a "prevailing party." *See Varney*, 61 Cal. App. 5th at 230–31 (discussing Varney Entertainment's voluntary dismissal of the action and refiling in another forum).

B

The district court also did not abuse its discretion in deciding that this is not an "exceptional case" under the Lanham Act. District courts "should examine the

10

'totality of the circumstances' to determine if the case was exceptional" using a preponderance of the evidence standard. *SunEarth*, 839 F.3d at 1181 (citation omitted). Here, the district court neither applied the wrong rule nor applied the correct rule in a manner that was (1) illogical, (2) implausible, or (3) without support in inferences that may be drawn from the facts in the record. *United States v. Sleugh*, 896 F.3d 1007, 1012 (9th Cir. 2018).

Although the district court did not quote the "totality of the circumstances" standard explicitly, it cited another decision applying the correct test. Moreover, its denial of attorneys' fees rested on the absence of evidence that the action was frivolous or unreasonable—not on a rule of construction, *see Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 402 (1990) (approving reversal for abuse of discretion if "a district court's findings rest on an erroneous view of the law" (internal quotation marks omitted))—and considered explicitly almost all of the non-exclusive factors this Court listed in *SunEarth*, *see* 839 F.3d at 1181.

The district court's conclusion that this is "a run-of-the-mill dispute over the sufficiency of Defendants' contacts with [California]" is not illogical, implausible, or without support in the record. *See Sleugh*, 896 F.3d at 1012. Yeager's past conduct and general litigiousness do not automatically mean that this suit against

11

these Defendants was unreasonable.  Accordingly, we need not reach whether Defendants were prevailing parties.

V

We affirm the district court's dismissal of Yeager's claims against Airbus S.E., Airbus Helicopters, Inc., and Airbus Defense and Space, Inc.  Yeager has abandoned any argument to the contrary by failing to discuss these entities in his appellate briefing and, instead, only disputing the dismissal of his claims against Airbus S.A.S.  *See Greenwood v. FAA*, 28 F.3d 971, 977 (9th Cir. 1994) ("We review only issues which are argued specifically and distinctly in a party's opening brief.").

For the same reason, we affirm the district court's dismissal of the contract claims.  For contract-related claims, the Ninth Circuit asks if "a defendant has purposefully availed himself of the privilege of conducting activities within the forum state."  *See Picot*, 780 F.3d at 1212 (citation omitted).  The district court also determined that Yeager failed to allege purposeful availment.  Because Yeager's briefing does not discuss purposeful availment, he has abandoned any contrary argument on appeal.  *See Greenwood*, 28 F.3d at 977.

## VI

Given our resolution of the issues, we need not—and do not—reach any other issue urged by the parties on appeal.  We grant Yeager's motion for judicial notice.  Each parties shall bear its own costs on appeal.

**AFFIRMED.**